USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________________
DATE FILED: 8/31/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

MUJAHED ALI, *et al.*,

Defendants.

1:25-cr-586-GHW

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

On November 17, 2025, law enforcement agents executed a warrant to search a convenience store and a nearby shed. Inside the shed, the agents found a hidden entrance to a basement storage space filled with drug paraphernalia. Defendant Mujahed Ali, an employee of the convenience store, has moved to suppress that evidence, contending that the search of the storage space exceeded the scope of the warrant and therefore violated his rights under the Fourth Amendment. Because he has failed to demonstrate a legitimate expectation of privacy in the storage space, Mr. Ali has not established his standing to object to the search. Therefore, Mr. Ali's motion to suppress is DENIED.

## I. BACKGROUND[1]

### A. The Search Warrant

On November 13, 2025, Magistrate Judge Robyn F. Tarnofsky issued a warrant authorizing the search of a convenience store named Aseel Grocery Store. Dkt. No. 31-1 at 1–11 (the "Search

[1] The following facts are derived from Defendant Mujahed Ali's motion to suppress and the accompany supporting affirmation, Dkt. No. 31 ("Mot."), the exhibit in support of that motion, Dkt. No. 31-1, and the Government's memorandum of law in response, Dkt. No. 32 ("Opp'n").

Warrant"). Judge Tarnofsky also authorized the search of a "shed[,]" "located a short distance down the street from [Aseel Grocery Store,]" that "has a gray metal exterior and is accessed through a locked door[.]" *Id.* at 8. The Search Warrant identified the shed as the structure circled in red below. *Id.*




Special Agent Alex Johnson of the Drug Enforcement Administration swore out an affidavit in support of the Search Warrant. Dkt. No. 31-1 at 12–24 (the "Johnson Affidavit"). The Johnson Affidavit incorporated by reference a criminal complaint against Mr. Ali. *Id.* at 25–52. In his affidavit, Agent Johnson contended that there was probable cause to believe that the store and shed contained "evidence, fruits, and instrumentalities" of a conspiracy to distribute narcotics in violation of 21 U.S.C. § 846. *Id.* at 14. He described how, on multiple occasions, an undercover officer and a confidential source visited Aseel Grocery Store to purchase cutting agents for narcotics and/or glassine envelopes. *Id.* at 14–15. In certain of these occasions, store employees left the store, walked down the street to the shed, and returned to the store with a bag that was later found to contain cutting agents for narcotics. *Id.* at 15.

Search Warrant in hand, on November 17, 2025, law enforcement agents searched Aseel Grocery Store and the shed. The agents found that the shed served as a hidden entrance to a basement. The agents descended the stairs, walked down a hallway, and reached a locked door.

They unlocked the door, using keys they found inside the store, and discovered two separate rooms containing drug paraphernalia.

### B. Procedural History

On December 17, 2025, Mr. Ali was charged in an indictment with conspiracy to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1). Dkt. No. 14. On May 19, 2026, the Court set a briefing schedule for pretrial motions. Dkt. No. 27. In accordance with that briefing schedule, Mr. Ali's motion to suppress was due by July 17, 2026, the Government's opposition was due three weeks after service of the motion, and Mr. Ali's reply was due one week after service of the opposition. *Id.*

On July 17, 2026, Mr. Ali filed a motion to suppress with an accompanying supporting affirmation and attaching the Search Warrant as an exhibit. *See generally* Mot. Mr. Ali asked the Court to suppress evidence found inside the basement storage space during the search on November 17, 2025. Mr. Ali argued that the storage space was not within the scope of the Search Warrant. He contended that the "extended hallway and locked door leading to separate and distinct storage rooms" were "not part of the shed." Mot. at 5. Mr. Ali emphasized the "layers of separation" between the shed and the basement storage rooms, including the staircase, the hallway, and the locked door. *Id.* Mr. Ali argued that the "entry and search inside of the two storage rooms . . . clearly exceeded the scope of the search of the 'shed,'" and, accordingly, all physical evidence found inside the rooms should be suppressed. *Id.* at 5-6.

On July 31, 2026, the United States submitted a memorandum in opposition to the motion. *See generally* Opp'n. The Government argued that Mr. Ali did not have standing to object to the search of the storage space because he had not asserted any proprietary or possessory interest in the store or its auxiliary spaces. *Id.* at 7–9. The Government contended that the search of the storage space was within the scope of the Search Warrant because Judge Tarnofsky "intended to, and in

fact, did authorize law enforcement to search [the] auxiliary space where [s]tore employees were seen retrieving suspected cutting agents and drug paraphernalia." *Id.* at 12. The Search Warrant's use of the word "shed," the Government argued, was intended to make the premises to be searched "more readily identifiable" and did not limit the scope of the Search Warrant to just the "small structure." *Id.* Even if the agents had exceeded the scope of the warrant, the Government contended, "the good-faith exception bars the extreme remedy of exclusion of evidence[.]" *Id.* The agents "reasonably interpreted" the Search Warrant to authorize a search of the storage space, and there was "no danger that the agents searched spaced that belonged to . . . other businesses or individuals." *Id.* at 13. Mr. Ali's reply was due on August 7, 2026. As of the date of this opinion, he has not filed a reply brief or any evidence to establish his standing to assert his motion.

## II. LEGAL STANDARD

"The Fourth Amendment protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy." *United States v. Lauria*, 70 F.4th 106, 120 (2d Cir. 2023); U.S. Const. amend. IV. "Fourth Amendment rights are personal, and may be enforced only by persons whose own protection under the Amendment has been violated." *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) (citing *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978)). To contest the validity of a search, a defendant "must demonstrate that he *himself* exhibited an actual subjective expectation of privacy in the area searched, and that this subjective expectation is one that society is willing to accept as reasonable." *Id.* (emphasis in original) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

The Fourth Amendment has long been recognized to protect against unreasonable searches of commercial premises, as well as to private homes. *See New York v. Burger*, 482 U.S. 691, 699 (1987). "An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home." *Id.* at 700. When objecting to the search of

a commercial area, the defendant must make a "sufficient showing of a possessory or proprietary interest in the area searched" and "demonstrate a sufficient nexus between the area searched and his own work space." *United States v. Chuang*, 897 F.2d 646, 649(2d Cir. 1990) (quotations and alterations omitted). "The presence of these factors necessarily must be determined on a case-by-case basis." *Id.* at 649–650. The "greater the degree of exclusivity and control over a work area, and the more time a defendant spends there, the more likely standing is to be found. By contrast, the less private a work area—and the less control a defendant has over that work area—the less likely standing is to be found." *United States v. Tranquillo*, 606 F. Supp. 2d 370, 377 (S.D.N.Y. Mar. 4, 2009) (citing *United States v. Hamdan*, 891 F. Supp. 88, 94 (E.D.N.Y. 1995)).

## III. DISCUSSION

Mr. Ali's motion to suppress is denied because he has failed to establish a legitimate expectation of privacy in the storage space. Whether Mr. Ali has standing to object to the search "involves two distinct questions: first, whether [he] had a subjective expectation of privacy; and second, whether that expectation of privacy is one that society accepts as reasonable." *United States v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008).

Mr. Ali has failed to establish that he had a subjective expectation of privacy in the storage space. The Court "cannot just assume a subjective expectation of privacy." *United States v. Ulbricht*, No. 14-CR-68 (KBF), 2014 WL 5090039, at 6, 13, *aff'd*, 858 F.3d 71 (2d Cir. 2017), *overruled on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018). Instead, a defendant's privacy interest "must be established by a declaration or other affirmative statement of the person seeking to vindicate his . . . personal Fourth Amendment interest in the . . . place searched[.]" *Id*; *see also United States v. White*, No. 17-CR-611 (RWS), 2018 WL 4103490, at *8 (S.D.N.Y. Aug. 28, 2018) (holding that defendant's burden to "prove the facts necessary to establish that his personal Fourth Amendment rights were violated . . . . 'is met only by sworn evidence, in the form of affidavit or testimony, from the

defendant or someone with personal knowledge.'" (quoting *United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995))).

Even after being confronted with the Government's argument regarding his lack of standing, Mr. Ali has not submitted a sworn statement in connection with his motion to suppress regarding his expectation of privacy in the storage space. His attorney's affidavit tellingly lacks any such assertion. Mot. at 3-6. Mr. Ali's "failure to make the requisite showing as to his subjective expectation of privacy precludes the Court's consideration of the reasonableness of that view." *United States v. Filippi*, 2013 WL 208919 (RA), at *6 (S.D.N.Y. Jan. 16, 2013). Mr. Ali's motion "may be denied on this basis alone." *Id.*

Nor has Mr. Ali presented any evidence that would allow the Court to conclude that, had Mr. Ali established a subjective expectation of privacy in the storage space, any expectation of privacy in the area searched would be reasonable. Mr. Ali does not claim to own or lease the storage space, and there is no evidence before the Court that Mr. Ali lived or otherwise kept his personal belongings there. *See United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) (noting that in assessing Fourth Amendment protections, "[t]he court generally considers whether the defendant had any property or possessory interest in the place searched"). There is also no indication that the storage space was Mr. Ali's 'private' place of work. *Mancusi v. DeForte*, 392 U.S. 364, 368–69 (1968) (noting that "[i]t has long been settled that one has standing to object to a search of his office," but a reasonable expectation of privacy is limited to the individual's "private" office). Mr. Ali was an employee of Aseel's Grocery Store and there is no suggestion that he performed his job primarily in the basement storage space. There is also no evidence before the Court that Mr. Ali had personal control over the storage space. To the contrary, the keys to access the storage space were kept in the store, where all store employees had access to them. *See United States v. Gray*, 283 F. App'x 871, 873 (2d Cir. 2008) (finding no privacy interest where space was "not subject to [defendant's]

exclusive control").

Because Defendant Ali has not established that he has standing to object to the search of the storage space, the Court need not reach the question of whether the agents exceeded the scope of the Search Warrant. *See United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) ("Since we hold that defendant failed to prove that he had a legitimate expectation of privacy to challenge the search of [the premises], we need not reach the substance of his suppression motion[.]").

Nor is it necessary for the Court to hold an evidentiary hearing. A defendant is entitled to an evidentiary hearing on a motion to suppress if he "establishe[s] that there [are] disputed factual issues going to the validity of the search." *United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023). Mr. Ali did not identify any such disputed issue, "nor could he, given that the government did not contest any of the facts he alleged, but instead argued those facts were legally insufficient to sustain [the defendant's] burden of establishing Fourth Amendment standing." *United States v. Caesar*, 2026 WL 742765, at *2 (2d Cir. Mar. 17, 2026) (summary order). Mr. Ali had a clear opportunity to provide the Court evidence to support a finding that he had standing, but chose not to do so. There is no disputed fact that the Court must resolve. Accordingly, Mr. Ali is not entitled to an evidentiary hearing on his motion.

## IV. CONCLUSION

For the foregoing reasons, Mr. Ali's motion to suppress is DENIED. The evidentiary hearing scheduled for September 14, 2026 is adjourned *sine die*. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 31.

SO ORDERED.

Dated: August 31, 2026
New York, New York

GREGORY H. WOODS
United States District Judge